IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| DEREK THOMPSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | No. 06 C 7033 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| WAUKESHA STATE BANK, as successor Trustee ) | |
| of the Derek Thompson Trust, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| & ) | |
| ) | |
| ERICA THOMPSON, CYNTHIA THOMPSON ) | |
| and JACQUELINE MAXWELL, ) | |
| ) | |
| as Nominal Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

In a two count amended complaint, plaintiff Derek Thompson has sued defendant Waukesha State Bank, as successor Trustee of the Derek Thompson Trust ("defendant"[1]), for revocation of the trust and breach of fiduciary duty. Plaintiff alleges federal diversity jurisdiction under 28 U.S.C. § 1332. Plaintiff has moved for summary judgment on Count One seeking revocation of the trust, and defendant has moved for summary judgment on both counts arguing that the court should abstain under the Rooker-Feldman Doctrine from hearing the case and/or decline to exercise jurisdiction over this "probate-like" case. In addition, plaintiff has filed five separate motions seeking to strike: (1) defendant's Local Rule ("L.R.") 56.1(b)(3)(C)

---

[1] The individual defendants are mere contingent beneficiaries of the trust at issue, and plaintiff seeks no relief against them.

Statement of Additional Facts; (2) defendant's L.R. 56.1(a)(3) Statement of Material Facts; (3) defendant's response to plaintiff's L.R. 56.1(a)(3) Statement of Facts; (4) defendant's reply to plaintiff's L.R. 56.1(b)(3)(C) Additional Facts; and (5) defendant's cross motion for summary judgment. For the reasons discussed below, plaintiff's motions to strike are denied, plaintiff's motion for summary judgment is granted on Count One, and defendant's motion for summary judgment is denied.

**Satellite Disputes**

Summary judgment is proper if the record shows that there is no genuine issue as to any material fact, and at the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of directing the court to the determinative issues and the available evidence that pertains to each. Then, the non-moving party must come forward with affidavits, depositions, answers to interrogatories, or admissions and designates specific facts that establish that there is a genuine issue for trial. A non-moving party cannot rest on the pleadings alone. Selan v. Kiley, 969 F.2d 560, 564 (7th Cir. 1992).

To help make this task easier, the court has adopted L.R. 56.1, which requires certain filings in support of and opposition to motions for summary judgment. Specifically, L.R. 56.1(a)(3) requires the movant to provide a statement of material facts as to which it contends there is no genuine issue. The statement is to be in the form of numbered paragraphs with the specific references to parts of the record or other supporting materials relied upon. The non-movant must reply to each paragraph, either admitting that the statement is uncontested or stating that the non-movants disagree, and specifically citing to supporting materials showing there is a genuine factual dispute. L.R. 56.1(b)(3)(A), (B). The nonmovant may also supply a

statement of additional facts, if any, that would defeat summary judgment, again in the form of numbered paragraphs with supporting citations. L.R. 56.1(b)(3)(C). The moving party must then reply to the statement of additional facts paragraph by paragraph admitting the statement or contesting it, again with citations to supporting materials.

This procedure seems simple enough. All too often, however, compliance with the local rule has led to extensive, expensive, and unnecessary satellite litigation. The instant case is a prime example. Rather than identifying whether material facts are in dispute, plaintiff has moved to strike each of defendant's L.R. 56.1 filings. As defendant points out, each of these motions is highly technical and each has little or no merit. One example is sufficient to demonstrate the problem. Paragraph 18 of defendant's L.R. 56.1(3)(a)(A) Statement of Facts Not in Dispute provides:

> In 1987, Derek [plaintiff] (then eight years old) sustained a double amputation of his legs when he was pulled under the wheels of a moving train.

To support that statement, defendant attaches a "Petition to Settle Cause of Action of Minor's Estate," filed in the Circuit Court of Cook County, Illinois, indicating that plaintiff had a cause of action against Chicago Western Indiana Railroad for injuries sustained on April 12, 1987, and that satisfaction of a judgment in the amount of $9,800,000 had been tendered. Attached to that petition as Exhibit A was a description of the injuries plaintiff's had incurred.

Plaintiff has moved to strike that statement, and other similar statements detailing the history of the minor guardianship proceedings that ultimately led to the formation of the trust at issue in the instant case, not because the facts stated are not true, but because defendant did not attach a "certified copy" of the court documents. Notably, plaintiff does not attack the accuracy of the court documents attached to defendant's filings, only that defendant failed to properly

3

authenticate the document by supplying certified copies. Additionally, in his L.R. 56.1(b)(3) response to defendant's statement no. 18 (and others like it) plaintiff denied the statement because the supporting document was not authenticated. Plaintiff then provided a 2 ½ page argument as to why the supporting document (the Circuit Court filing) is inadmissable at trial. He then repeated that same 2 ½ page argument as his response for each of defendant's statements of fact numbered 19 through 40. Even if plaintiff's legal position was correct (it is not; such state court documents are routinely admitted absent some question as to authenticity), it is and was easily rectified by defendant's filing of certified copies. It is precisely this kind of inane response and motion that results in unnecessary litigation, wasting the parties and, more importantly, this court's time and effort.

Moreover, and of greater concern, whether or not defendant's statement No. 18 was properly supported in the record, plaintiff cannot deny the underlying fact. No one knows better than plaintiff that the factual statement contained in paragraph 18 – that he lost his legs in a railroad accident – is true. He cannot deny it, and his attempts to do so, and his attempts to deny the existence of the underlying state court guardianship case that led to the creation of the trust at issue, are improper and serve only to frustrate this court's ability to deal with the pending motions in a timely manner. Accordingly, all of plaintiff's motion to strike are denied and the court accepts as true all of defendant's L.R. 56.1 statement of facts unless specifically noted.

## **FACTUAL BACKGROUND**

In 1997, when plaintiff was eight years old, he was pulled into and under the wheels of a moving train. As a result, his left leg was amputated at the hip level and his right leg was amputated below the knee. On July 15, 1991, his mother filed in the Circuit Court of Cook

4

County Probate Division a "Petition for Guardianship of Minor" on plaintiff's behalf, requesting that Harris Trust and Savings Bank be appointed as guardian of plaintiff's estate because plaintiff expected to receive a significant personal injury settlement. That case, No. 91 P 6722, was assigned to Judge Benjamin Novoselsky. The petition was granted and Harris was appointed guardian of the estate.

In 1995 the guardianship estate received settlement funds from the personal injury action including $2,940,434 for the purchase of a structured annuity and cash in the amount of $2,667,583.41 net of all costs and expenses. In the order approving settlement of the personal injury action the Probate Court ordered that the court was to receive a report, prior to June 11, 1996 (plaintiff's 18 birthday), to determine if a hearing was needed to adjudicate whether plaintiff should be declared a "disabled person" and an adult estate opened. On December 26, 1995, the court appointed Thomas Metskas as guardian ad litem for plaintiff.

Metskas filed his report with the probate court on May 9, 1996. That report indicated that plaintiff had been evaluated by clinical psychologist Ronald Ganellen, Ph.D., and by Dr. Henry W. Lahmeyer. Dr. Ganellen's report indicated that plaintiff was not able to manage large sums of money in a mature and responsible manner. Dr. Lahmeyer's report indicated that plaintiff was "a disabled person" as defined under 755 ILCS 5/11(a)(2)(b), and that plaintiff was a person with a mental illness and a disability and not fully able to manage his estate. The report recommended that a guardian of the estate be appointed.

As a result, the probate court ordered the guardian ad litem to file petition for "Adjudication of Disability" and appointment of Harris as guardian of plaintiff's adult guardianship estate. The guardian ad litem filed the petition, which was opposed by plaintiff.

That case, No. 96 P 4895, was assigned to Judge Miriam Harrison. Plaintiff also moved to terminate the minor guardianship, discharging the guardians, and directing that all funds be turned over to him so he could pay his attorney to oppose any petition to adjudicate him a "disabled person."

During the pendency of these matters, the parties negotiated the terms of an irrevocable trust agreement between plaintiff and Harris Bank to which the assets the of the guardianship estate could be transferred and administered. On February 14, 1997 (after plaintiff had reached the age of majority), plaintiff submitted to a psychological assessment by Dr. Judith M. Kahn, Ph.D., to determine his ability to manage his financial affairs if the trust was established. That report indicated that plaintiff could manage his monthly income from the proposed trust and that he appreciated the nature and extent of his assets and the conditions of the trust, and acknowledged that the conditions were irrevocable.

The parties ultimately reached agreement on the terms of the trust and the guardian ad litem submitted the trust agreement to the court for an in camera inspection. On March 20, 1997, Judge Novoselsky ordered that: "the court has reviewed and approves the Derek Thompson Trust Agreement dated 3-7-97," and directed the guardian ad litem to withdraw the petition for appointment of guardianship of an adult disabled person. On August 7, 1997, the guardian ad litem filed a final report showing the funds going into the trust.

## DISCUSSION

As noted, plaintiff has moved for summary judgment on Count One, in which he seeks to revoke the trust. Defendant has also moved for summary judgment, arguing that the court lacks subject matter jurisdiction under the Rooker-Feldman Doctrine and/or should decline to exercise

6

jurisdiction over this case as "probate related."  Because defendant's motion raises a direct attack on the court's subject matter jurisdiction, which is the first question in every case, the court addresses it first.  If the court concludes that it lacks subject matter jurisdiction it must proceed no further.  State of Illinois v. City of Chicago, 137 F.3 474, 478 (7th Cir. 1998).

**Subject Matter Jurisdiction**

Under the Rooker-Feldman Doctrine, federal courts other than the United States Supreme Court have no jurisdiction to review state court judgments unless Congress has expressly authorized them to do so.  See Rooker v. Fidelity Trust Co., 263 U.S. 413, (1923); District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983).  In Exxon Mobile Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005), the Supreme Court recently clarified that the Rooker-Feldman Doctrine "excludes federal subject matter jurisdiction only when, after state proceedings have ended, a losing party in state court files suit in federal court complaining of an injury caused by the state court judgment and seeking review and rejection of that judgment." Holt v. Lake County Board of Commissions, 408 F.3d 335, 336 (7th Cir. 2005); citing Exxon Mobil, 544 U.S. at 284-85.

Defendant argues that because the trust was created and entered into as a means of settling the petition in the state court seeking to have plaintiff adjudicated as a "disabled adult," the trust constitutes a state court approved settlement agreement which is considered a judgment of decision for purposes of Rooker-Feldman.  See 4901 Corp. v. Town of Cicero, 220 F.3d 522, 528 n.5 (7th Cir. 2000).  The trust agreement, however, was never approved by the court in that case, and did not become part of an order settling that matter.  Instead, the trust was reviewed by Judge Novoselsky in the minor guardianship case at the time he ordered the guardian ad litem to

7

withdraw his petition seeking to have plaintiff adjudicated as a disabled adult. In any event, even if the trust agreement constitutes a settlement, plaintiff does not seek to overturn that judgment, nor is he complaining of injuries caused by a state court decision. He seeks only a determination of his rights under that agreement. No state court has ever held that plaintiff cannot revoke the trust. At most, the probate court determined that entering into the trust was in plaintiff's best interest. Accordingly, this court concludes that <u>Rooker</u>-<u>Feldman</u> does not divest the court of jurisdiction.

Defendant also argues that the court should exercise its discretionary authority to abstain from hearing the case in favor of the parties proceeding in the probate court. Defendant acknowledges that the probate exception rule barring federal jurisdiction as delineated by the Supreme Court in <u>Marshall v. Marshall</u>, 126 S.Ct. 1735, 1748 (2006), does not apply to the instant case. Instead defendant suggests that the probate court is somehow better suited to hear the case because of its expertise in dealing with guardianship and related matters. This court disagrees.

First, it is unclear that such discretionary authority to decline jurisdiction exists after <u>Marshall</u>. Defendant has cited no case where discretionary abstention has been applied after the <u>Marshall</u> decision. Even if this court has discretion to decline jurisdiction, however, it elects not to do so. The case involves interpretation of a trust document under Illinois law. As pled by plaintiff, resolution requires no special expertise in probate or guardianship law. Accordingly, the court concludes that it has subject matter (diversity) jurisdiction and denies defendant's motion for summary judgment for lack of jurisdiction.

**<u>Revocation of Trust</u>**

Having concluded that subject matter jurisdiction is present, the court must consider plaintiff's motion for summary judgment on Count I, which seeks a revocation of the trust. Plaintiff is both the settlor and beneficiary of the trust which, as originally entered, provided that during plaintiff's lifetime the trustee shall pay the income of the trust to plaintiff in monthly installments. The trustee had discretion to pay a portion of such monthly installments directly to providers for monthly recurring expenses. Plaintiff had the right to withdraw from the principal as set forth in Article I, paragraph 2(b):

> (1) 15 percent in value after 25 years of age;
> (2) 17.65 percent in value . . . after 30 years of age;
> (3) 22.27 percent in value . . . after 35 years of age; and
> (4) the balance after 40 years of age.

Article III provided that upon plaintiff's death, the balance of the trust estate was to be distributed 1/3 to his brother Eric, 1/3 to his sister Cynthia, and 1/3 to his mother, Jacqueline Maxwell. Article VI of the trust provides that it shall be governed by Illinois law. Paragraph 5 of Article VI, titled "Limited Right to Amend: Irrevocability," the provision most relevant to the instant dispute, provides:

> The settlor may at any time or times during his lifetime by instrument in writing delivered to the trustee amend Article III of this agreement. Notwithstanding the above, the following class of individuals and entities, collectively shall be entitled to receive no less than a five percent (5%) residual interest in the trust estate upon the settlor's death: Jacqueline Maxwell, Eric Thompson and Cynthia Rosalee Thompson, or any of their lineal decedents <u>per</u> <u>stirpes</u>. This power is personal to the settlor and may not be exercised by his legal representatives or others. Other than as stated above, this agreement shall not be subject to amendment or revocation.

9

On September 14, 2004, plaintiff executed "Amendment No. 2 to Derek Thompson Trust.[2]" This amendment attempted to alter a number of provisions. First, plaintiff amended Article IV to amend the remainder beneficiaries from his mother, brother and sister to his children. Next, Amendment No. 2 purports to amend Article VI, by deleting it in its entirety and replacing it with following:

> 5. <u>Right to Amend.</u> The settlor may, at any time or times during his lifetime by delivering an instrument in writing to the then acting trustee, under the trust, amend or revoke any provision of this trust agreement.

Plaintiff's mother and sibling, the original contingent beneficiaries, all signed Amendment No. 2 indicating their consent.

In early January 2007, plaintiff's mother, brother, and sister each executed a "Complete & Irrevocable Assignment of Interest," by which each purportedly assigned to plaintiff all of his or her rights and interests of any nature in the trust. Then, on January 11, 2007, pursuant to Amendment No. 2, plaintiff executed a third amendment by adding a paragraph 6 to Article VI providing:

> 6. <u>Revocability</u>. The settlor may at any time or times during his lifetime revoke this agreement and the trust by delivering to then acting trustee under this trust, an instrument in writing indicating such.

Also on January 11, 2007, plaintiff tendered to defendant a written instrument purporting to revoke the trust.

Plaintiff argues that based on the executed amendments, he has an absolute right to revoke the trust. Whether he is correct depends on the validity of Amendment No. 2, because if

---

[2]Amendment No. 1 is not at issue in this case although defendant also questions its validity.

that amendment is valid, then the document reserved to plaintiff the right to make any further authorizations he wanted, without consent of the beneficiaries. The subsequent amendment making the trust revokable at will would then also be valid.

The general rule in Illinois is that a written instrument that settles a trust without expressly or impliedly reserving to the settlor the power to alter, amend, modify or revoke creates a trust that cannot be so altered, amended, modified or revoked. Such a trust can be modified or revoked, however, upon consent of all of the beneficiaries. Mortimor v. Mortimor, 6 Ill. App. 3d 217, 222 (1st Dist. 1972). The same rule applies to trusts that expressly prohibit modification or termination. See e.g. Disher v. Fulgoni, 161 Ill. App. 3d 1, 14 (1st Dist. 1987) ("Where all beneficiaries of a trust, of whom is none is under legal incapacity, consent to the termination of a trust, that result can be accomplished.") Indeed, consent of the settlor and one or more but not all of the beneficiaries can compel modification if the interests of the beneficiaries who do not consent suffer no prejudice. Id.

In the instant case, plaintiff as settlor and beneficiary and all the contingent beneficiaries agreed to Amendment No. 2, which gave plaintiff the right to amend or revoke any provision of the trust. Thus, Amendment No. 2 was valid. Therefore, Amendment No. 3, which gave plaintiff the right to revoke the agreement, was also valid. Plaintiff did in fact revoke the agreement by delivering to defendant or successor trustee an instrument in writing indicating such. Consequently, plaintiff is entitled to summary judgment on Count One.

Moreover, even if Amendment No. 2 were not valid, plaintiff is still entitled to revoke the trust. Under Illinois law, which follows § 339 of the Restatement (Second) of Trusts, a settlor who is also sole beneficiary may revoke the trust even if the power to do so is not reserved, or if

the trust provides that it is irrevocable.  See Stewart v. Merchants National Bank, 3 Ill. App. 3d 337, 339 (2d Dist. 1972); Vlahos v. Andrews, 362 Ill. 593 (1936) (adopting § 339 of the Restatement of Trusts).

Section 339 of the Restatement (Second) of Trusts provides:

If the settlor is the sole beneficiary of a trust and is not under an incapacity he can compel termination of the trust, although the purposes of the trusts have not been accomplished.

All the original contingent beneficiaries have assigned all their interest in the trust to plaintiff, leaving him both the settlor and sole beneficiary.  Therefore, plaintiff argues that under § 339 he is entitled to revoke the trust.

Defendant does not dispute the general rule, but argues that plaintiff is acting under an incapacity.  The only evidence offered to support this argument, however, is the psychologists' reports issued more than ten years ago when plaintiff was 18.  These reports are too old to sufficiently contest plaintiff's affidavit, in which he indicates that he is now of sound mind and not under any incapacity.  Moreover, defendant has not asked plaintiff to submit to a current psychological examination.  Therefore, the court concludes that even if Amendment No. 2 is invalid, plaintiff as sole beneficiary and settlor is entitled to revoke the trust.[3]

---

[3] The court's ruling in plaintiff's favor should not be construed as attacking the propriety of defendant trustee's position in this action.  As defendant points out, a trustee generally has the duty to defend the trust from what the trustee in good faith believes to be a questionable request to revoke or amend its terms.  See Bogart, The Law of Trust and Trustees, § 581, p. 334 (Rev. 2d Ed. 1980).  The court finds that defendant's conduct in the litigation was proper and responsible.  Accordingly, on its own motion, the court finds that Count Two of the amended complaint, which summarily alleges that defendant's resistance to plaintiff's attempt to revoke the trust "constitutes a breach of duty to plaintiff," is without merit and is thus dismissed.

**CONCLUSION**

For the reasons set forth above, plaintiff's motions to strike are all denied. Defendant's motion for summary judgment for lack of jurisdiction is denied. Plaintiff's motion for summary judgment on Count One is granted, and the court hereby enters judgment for plaintiff, declaring that plaintiff may revoke the trust. Plaintiff's other requests for relief are denied. Count Two is dismissed for the reasons stated in footnote 3 below. Defendant is directed to provide a full accounting of the trust assets to plaintiff on or before October 5, 2007. The parties are directed to appear for a final post-judgment status hearing on October 10, 2007, at 9:30 a.m.

**ENTER:** **September 12, 2007**

_____
**Robert W. Gettleman
United States District Judge**